## 19173

SOUTHERN FARM BUREAU CASUALTY INSURANCE COMPANY, Respondent, v. HARTFORD ACCIDENT AND INDEMITY COMPANY, Marion T. Burnside, Jr., Doing Business as Marion Burnside, Marion T. Burnside, III, a Minor, Appellants, and Eunice L. Campbell, a Minor, and Mike Welch, a Minor, R. D. Lake, Donna Marie Rogers, a Minor, Mrs. Golda Ellen Rodenbaugh, Herbert Rodenbaugh, Shelby Rodenbaugh, a Minor and Cherrell Ann Rodenbaugh, a Minor, Respondents.

(179 S. E. (2d) 454)

*Messrs. Donald V. Richardson, III, and R. Davis Howser, Whaley, McCutchen, Blanton & Richardson,* of Columbia, *for Appellants,*

*Messrs. John Gregg McMaster,* and *Robert J. Thomas, Tompkins, McMaster & Thomas,* of Columbia, *for Respondent,*

*Messrs. J. Reese Daniel, George H. Davis,* and *Dudley H. Britt,* all of Columbia, *for Individual Respondents,*

February 19, 1971.

LITTLEJOHN, Justice:

Southern Farm Bureau Casualty Insurance Company brings this declaratory judgment action against Hartford

Accident and Indemnity Company. There is involved the application of the omnibus clause of an automobile liability insurance policy issued by Hartford to Marion T. Burnside, Jr. and Harriett Newman Burnside, doing business as Marion Burnside. Several individuals involved in an automobile collision are also made parties to the action.

The case was tried before the Master in Equity for Richland County, who recommended that the court hold that Hartford owed no coverage to Donna Marie Rogers who was driving the Chrysler station wagon owned by Marion T. Burnside at the time of the collision. On appeal to the circuit judge the recommendation of the Master was rejected. The court held that Miss Rogers was driving the car with the consent of Marion Burnside, Jr.

Hartford has appealed; we reverse.

Marion Burnside is a Plymouth-Chrysler dealer at Columbia. Hartford issued and had in effect its policy of liability insurance covering the operation of a Chrysler station wagon on July 4, 1968, the day of the collision. The station wagon was titled and registered in the name of Marion T. Burnside, Jr., d/b/a Marion Burnside. Burnside was the named insured in the insurance policy. Marion T. Burnside, Jr. permitted his wife, Mrs. Blake Burnside, to use this station wagon as if it were her own vehicle. He permitted his son, Marion T. Burnside, III, age 16, called "Burnie", to use a Plymouth Roadrunner for his own purposes. His son worked in the business. Both cars had dealer tags and were what dealers refer to as "demonstrators." They were used as and if needed for showing to prospective customers, and were for sale. If sales of cars assigned to members of the family were effected, new demonstrators were supplied.

The station wagon kept by Mrs. Blake Burnside was actually used as a family car and driven occasionally as needed by Burnie. Burnie used the Roadrunner to go to school and to work, generally using it as he pleased.

On July 4, 1968, Mrs. Blake Burnside permitted Burnie to use the station wagon. He and his girl friend, Miss Rogers, along with Mike Welch and his girl friend, Eunice Campbell, went for a joy ride in the wagon. Miss Rogers requested Burnie to let her drive the station wagon and he agreed; with her driving, the station wagon collided with a vehicle occupied by the Rodenbaugh family, all of whom sustained injuries. They are parties to this action.

The only question necessary for this court to determine is whether Miss Rogers had implied permission of Burnie's father, Marion T. Burnside, Jr. (the insured), to use the station wagon at the time of the collision. If she had such permission, Hartford must defend actions against Miss Rogers.

We find, as did the Master in Equity, that no permission, expressed or implied, existed, and therefore Hartford is not liable under the omnibus clause of its policy for the delicts of Miss Rogers.

The burden of proof is upon Southern Farm Bureau (or other parties taking the same position) to show that expressed or implied permission actually existed under the facts and circumstances of the case. This burden of proof has not been met. *Rakestraw v. Allstate Ins. Co.*, 238 S. C. 217, 119 S. E. (2d) 746 (1961).

It was the testimony of the insured, Marion T. Burnside, Jr., that his wife, Blake Burnside had full authority to use the station wagon and no contest is made on the issue that she could lend the vehicle to their son, Burnie. The insured testified as follows:

"Q. All right, sir; and what instructions were given your son by you, about the use of your vehicles that involved before he got his license and during the time he received his license; was he given any instructions about allowing other people to drive the family automobile?

"A. Yes, he was told not to allow anybody else drive the car that he had, and if he got a traffic ticket he would no longer have an automobile.

"Q. All right, sir, and this has been understood in your household ever since your son got his license?

"A. That's right.

"Q. Now, was it all right with you, sir, for your son to allow an unlicensed driver to use the Chrysler station wagon?

"A. No, sir.

"Q. Had you known about it would you have forbidden the use of it?

"A. I would have.

"Q. And was the use of the Chrysler station wagon, by an unlicensed driver without your permission, sir?

"A. I didn't give permission to it."

Burnie Burnside testified that he had been instructed by his father, the insured, not to allow any person to drive any of the cars entrusted to him. As a result of his disobedience the Roadrunner was taken from him.

There is nothing in the testimony of any of the witnesses remotely indicating express consent for Miss Rogers to drive the station wagon. We also conclude that implied consent cannot be found in the evidence.

This court in *Rakestraw, supra,* said:

"The permission which puts the omnibus or extended coverage clause of the policy of insurance into operation may be either expressed or implied, but whether the permission be expressly granted or impliedly conferred, *it must originate in the language or the conduct of the named insured or someone having authority to bind her in that respect * * *."* (Emphasis added.)

While it is true, as argued by respondents, that Burnie was not cautioned on July 4 not to permit anyone to drive the station wagon, such is not controlling in the light of the instructions previously given, and in the light of the fact that Burnie knew he was not supposed to permit others to drive any of the family vehicles. Marion T. Burnside, Jr. had no reason to believe that Burnie had

disregarded his instructions or that he might disobey the instructions thereafter.

There are cases in other jurisdictions which have found implied consent even where an express prohibition was involved. See Annotation 4 A. L. R. (3d) 10 (1965). Those cases hold that it is the general "use" as opposed to the "operation" which must be permitted. Those cases are incompatible with the South Carolina Statute § 46-750.31(2):

"The term *'insured'* means the named insured and, while resident of the same household, the spouse of any such named insured and relatives of either, while in a motor vehicle or otherwise, and any person who uses, with the consent, expressed or implied, of the named insured, the motor vehicle to which the policy applies and a guest in such motor vehicle to which the policy applies or the personal representative of any of the above."

The policy provision involved here does not broaden, and cannot limit, the statute. The policy provides:

"IV. *Persons Insured*

"(3) with respect to the automobile hazard:

"(a) Any person while using, with the permission of the *named insured,* any automobile to which the insurance applies under the automobile hazard, provided his actual operation or (if he is not operating) his other actual use thereof is within the scope of such permission * * *."

Under this code section it is the *person* using the vehicle, and claiming omnibus coverage, who must have the consent of the named insured. Consent must run to the "person who uses" as well as to the use he makes. See: *Dearybury et al. v. New Hampshire Insurance Company,* S. C., 179 S. E. (2d) 206 (1971), and *State Farm Mutual Automobile Insurance Co. v. Allstate Insurance Co., et al.,* S. C., 179 S. E. (2d) 203 (1971).

Consent must flow from the insured or from one authorized to act in his behalf. Implied consent may be proved by direct or circumstantial evidence. Often,

in case of implied consent, circumstantial evidence must be relied on. On the civil side of the court, in order to prove a fact in issue by circumstantial evidence, proof of circumstances warranting a given inference is required. *Leek v. New South Express Lines,* 192 S. C. 527, 7 S. E. (2d) 459 (1940). Such proof has not been made in this case.

The view adopted by some courts in construing omnibus coverage is that permission to use an automobile for one purpose implies permission to use it for all purposes. We rejected that construction as unsound in *Rakestraw, supra.*

We conclude that there was no consent expressed or implied, and the decision of the lower court is

Reversed.

Moss, C. J., and BUSSEY and BRAILSFORD, JJ., concur.

LEWIS, J., dissents.

BUSSEY, Justice (concurring).

I am in accord with the conclusion that the driver of the Burnside vehicle was not operating such with the "consent, express or implied, of the named insured * * *." However, in accord with the views expressed in my concurring opinion in the recent case of *Dearybury, etc. v. New Hampshire Insurance Company,* I would remand the cause for consideration of the question of whether or not the driver of the Burnside vehicle was an insured of Hartford by virtue of being a guest in the vehicle. Here, as in *Dearybury,* substantial rights of minors are involved.

LEWIS, Justice (dissenting).

For the reasons stated in the dissent in *Dearybury v. New Hampshire Insurance Company,* S. C., 179 S. E. (2d) 206, I would hold that the use of the vehicle involved came within the coverage of Hartford's policy, and therefore dissent. I would affirm the judgment of the lower court.